IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SCOTT GUNN AND LISA GUNN, | ) |
| Plaintiffs, | ) |
| v. | ) 3:95-CV-2831-AH |
| OLEN MANNING, | ) |
| Defendant. | ) |

### MEMORANDUM OPINION AND ORDER

Pursuant to the District Court's Order in accordance with 28 U.S.C. § 636(c) filed on May 16, 1996, and the written consents of the parties to proceed before a United States Magistrate Judge, came on this day to be considered Defendant's motion for summary judgment filed on September 12, 1996, Plaintiffs' response and objections filed on October 2, 1996, Defendant's supplemental submissions filed on December 20, 1996, Plaintiffs' supplemental response filed on December 23, 1996, and Defendant's reply filed on January 14, 1997, and the affidavits and exhibits attached to the said pleadings, and the court finds and orders as follows:

<u>Statement of the Case</u>:  This is a civil rights case brought pursuant to 28 U.S.C. § 1983. Plaintiffs, Scott and Lisa Gunn, contend that Defendant Olen Manning ("Manning") violated their rights protected by the Fourth and Fourteenth Amendments to the United States Constitution by seizing a 1993 Chevrolet pickup truck without probable cause. Plaintiffs also allege state law claims for conversion and trespass. Manning asserts that he is entitled to qualified immunity because he was acting within the scope of his official duties as a law enforcement officer.



Standard of Review: Summary judgment is proper when pleadings and the evidence on file, along with any affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(c). The party moving for summary judgment based on qualified immunity must assert the defense in a properly supported motion. See Blackwell v. Barton, 34 F.3d 298, 301 (5th Cir. 1994). Once the movant makes such an assertion, the court undertakes a two-part inquiry to determine whether the movant is entitled to qualified immunity. First the court must determine whether the plaintiff has alleged a violation of a clearly established federal right. Siegert v. Gilley, 500 U.S. 226, 231, 111 S.Ct. 1789, 1793 (1991). If such a determination is made, the court proceeds to determine whether the actions of the defendant were objectively reasonable in light of the clearly established law outlining the specific contours of the federal right. Anderson v. Creighton, 483 U.S. 635, 639-40, 107 S.Ct. 3034, 3038-39 (1987).

Discussion: In this case, Plaintiffs allege that their vehicle was seized without probable cause. The right to be free from unreasonable searches and seizures is a right clearly established by the Constitution. Therefore, the critical inquiry in this case is whether the officer's actions in seizing the truck were objectively reasonable -- i.e., could a reasonable officer believe Manning's warrantless seizure to be lawful, in light of clearly established law and the information Manning possessed? See Anderson v. Creighton, supra, 483 U.S. at 641, 107 S.Ct. at 3040.

The competent summary judgment evidence includes the following:

Manning has been a police officer with the City of Grand Prairie, Texas since 1975. In 1990 he was assigned to the Federal Bureau of Investigation ("FBI") Interstate Theft Task Force with a primary duty of identifying and locating stolen motor vehicles. Manning Aff., at pp. 1-2.

Through investigative work Manning suspected Michael Barreras and Randall Brown, the owners of Texas Custom Truck Sales ("TCTS"), of dealing in stolen vehicles. Manning Aff., at p. 2.

During his investigation of TCTS, Manning received the license number of a pickup truck which had been sold by TCTS. Manning Aff., at p. 2. Manning made a registration inquiry with the Texas Department of Transportation in January 1995 and ordered a title history on the vehicle. Manning Aff., at pp. 2-3, Manning Depo., at pp. 62, 73. The inquiry revealed that the truck was reconditioned by TCTS and sold to Plaintiff, Scott Gunn. Manning Aff., at p. 3, Manning Depo., at p. 67. By the end of January 1995, Manning had the vehicle identification number ("VIN"), license number, and Form 68-A on Plaintiffs' truck. Manning Depo., at p. 79. A Form 68-A is mandated by Texas law and requires a police officer to certify that a salvaged or rebuilt vehicle is a legitimate, reconditioned vehicle. See Plaintiffs' Exhibit E-2, at p. 3.

On February 14, 1995 Manning received the title history to the truck. Manning Aff., at p. 3; See Defendant's Supplemental Submissions, Exhibit 6. The title history indicated that TCTS purchased a cab section for the rebuilt truck from Ennis Auto Salvage in Ennis, Texas. Manning Aff., at p. 3. Manning interviewed Jay Roberts of Ennis Auto Salvage who told Manning that Michael Barreras and Randy Brown purchased the cab from Roberts and that the cab had no public VIN. Manning Aff., at p. 3; Roberts Aff., at p. 2, ¶¶ 4, 5. Roberts also informed Manning that the cab had impact damage on its right side and that it had been purchased from Carl White Chevrolet in Corsicana, Texas. Manning Aff., at p. 3, Roberts Aff., at p. 2, ¶¶ 4, 6. Additionally, Roberts informed Manning that the body plate from the firewall had been removed. Roberts Aff., at p. 3, ¶ 6.

3

On May 22, Manning and FBI Special Agent Ralph Calvin Sieg went to Plaintiffs' home and inspected the truck. Manning Aff., at p. 4. An inspection of the vehicle revealed that: 1) the public VIN was missing; 2) the body plate was missing; 3) the EPA sticker was missing; 4) the glove box stickers were missing; 5) the driver's side door had a different VIN; 6) throughout the vehicle numerous parts were observed with different dates than the year of the vehicle; and 7) the underneath chassis of the vehicle did not show any evidence of being involved in a fire. Manning Aff., at p. 4. Additionally, Manning noted that the cab did not indicate that it had previously been damaged and repaired. Manning Aff., at p. 5. In his deposition, Manning stated that based on the absence of the body plate, the absence of the VIN in the glove box, and the fact that there was no noticeable repair work done to the cab of the truck, he had probable cause to believe the truck contained stolen parts. Manning Depo., at pp. 112, 116, 135.

However, the information possessed by Manning would have been consistent with the absence of these things on Plaintiffs' truck. Jay Roberts told Manning that the VIN and the body plate were missing from the cab that was sold to TCTS. Roberts Depo., at pp. 2-3, ¶¶ 4-6. Moreover, the Form 61 which was included in the title history reveals that the dash had been replaced on the truck. See Plaintiffs' Exhibit E-3, at p. 4. A new dash would have contained a new glove box which would not have had a VIN inside. Lastly, the fact that Manning could detect no repair marks to the exterior of the cab was just as consistent with a quality repair job as it was with possible criminal activity.

Manning contends that Texas law authorized the warrantless seizure of the truck based solely on the missing public VIN. TEX. REV. CIV. STAT. ANN. art. 6687-1, § 49(c) (now codified at § 501.158 of the Texas Transportation Code) states that:

4

(a) A peace officer may seize a vehicle or part of a vehicle without a warrant if the officer has probable cause to believe the vehicle or part:

(1) is stolen; or

(2) has had the <u>serial number</u> removed, altered, or obliterated (emphasis added).

Manning maintains that since the public VIN was missing and the identifying numbers on the body and the glove box were removed, this statute, standing alone, authorized his seizure of Plaintiffs' truck. However, Manning's summary judgment evidence fails to take into account the fact that when a salvaged motor vehicle is reconditioned and proper forms 61 and 68-A are filed with the Texas Department of Transportation, a <u>new</u> serial number is assigned to the vehicle. See TEX. TRANSP. CODE ANN. § 501.002(18)(D) (Vernon 1997). This new serial number, which had been affixed by a representative of the Texas Department of Transportation, was properly displayed on the door of Plaintiffs' truck when Manning inspected it. See Complaint, at p. 6, ¶ 12.[1] Therefore, Manning had no authority to seize the truck unless probable cause existed to believe the truck were stolen. Moreover, the Fifth Circuit has stated that where "officers acting reasonably and prudently on the basis of all the available information, and familiar with the practical considerations of everyday life, would not have concluded that the truck had been stolen," seizure based solely on a missing VIN is objectively unreasonable.

---

[1] Attached to Manning's affidavit, which was filed in this action on September 12, 1996, are photographs of the truck as it appeared when it was seized by Manning. See Manning Aff., Exhibit 4. Included in this exhibit is a photograph of a Texas Department of Transportation plate bearing the designation "Reassigned Vehicle Identification No." A close examination of the photograph reveals that the reassigned VIN is 2GCEC19KP1124665, which matches the number assigned by the Texas Department of Transportation on February 16, 1994 as listed on the Notice of Assigned Number or Installation of Reassigned Vehicle Identification Number. See Plaintiff's Supplemental Response, Exhibit 7, at p. 51.

Bigford v. Taylor, 834 F.2d 1213, 1219 (5th Cir. 1988), cert. denied, 488 U.S. 851, 109 S.Ct. 135 (1988).[2]

Although the summary judgment evidence establishes that Manning suspected that TCTS was dealing in stolen vehicle parts and that stolen parts had been installed on Plaintiffs' truck before they purchased it, such evidence fails to even intimate that Manning suspected the Plaintiffs of any wrongdoing. Of further significance is the fact that the new serial number was assigned to Plaintiffs' vehicle only after proper forms 61 and 68-A had been filed.

The Form 68-A was signed by Officer Pothen, a Texas peace officer. One purpose of the requirement that a peace officer sign off on the form 68-A is to ensure that the owners of legitimate reconditioned vehicles are not subjected to having their vehicles seized with impunity because of a facially inconsistent VIN. With this purpose in mind and given that Manning was well aware that a form 68-A had been completed for Plaintiffs' truck, absent additional information impugning the integrity of the Form 68-A, it cannot be held as a matter of law that a reasonable police officer could have concluded that there was probable cause to seize Plaintiffs' vehicle.

Manning testified that he chose to inspect the truck because he felt Officer Pothen, the officer who signed the Form 68-A, was not qualified to make the inspection. See Manning Depo., at p. 91. Moreover, Manning did not think that Officer Pothen inspected the truck at all. Manning Depo., at pp. 92, 93, 135.

---

[2] The Court is mindful that a panel of the Fifth Circuit ultimately concluded that the officer in Bigford was entitled to qualified immunity but this determination was made solely because the contours of the right were not clearly established at that time. Bigford v. Taylor, 896 F.2d 972, 974 (5th Cir. 1990).

In determining whether a reasonable officer could believe that the information in the possession of Manning was sufficient to establish probable cause for the seizure, the subjective belief of Manning is irrelevant. In seeking summary judgment, Manning has failed to articulate objective facts from which a reasonable officer might conclude either (1) that Officer Pothen was incompetent to inspect the vehicle prior to signing the Form 68-A or (2) that Pothen falsely certified to an inspection which he never conducted. Absent such articulated facts, the summary judgment evidence just as easily supports a reasonable inference that although Manning was aware that the vehicle was properly reconditioned and assigned a new VIN in accordance with Texas law, thereby obviating probable cause to believe the vehicle contained stolen parts, he none the less proceeded to seize Plaintiffs' vehicle. Accordingly, genuine issues of fact exist which preclude the granting of Manning's motion for summary judgment on Plaintiffs' § 1983 claims, based upon the defense of qualified immunity.

With respect to the state law claims against Manning, he is entitled to official immunity if he was performing discretionary duties within the scope of his authority and he was acting in good faith. City of Lancaster v. Chambers, 883 S.W.2d 650, 653 (Tex. 1994). Clearly good faith is not present in the case of an officer who seizes a vehicle without probable cause for doing so. Since genuine issues of fact remain on the question of whether Manning had probable cause to seize Plaintiffs' truck, it necessarily follows that genuine issues of fact remain as to whether he was acting in good faith in relation to Plaintiffs' state law claims.

For the foregoing reasons, it is **ORDERED** that Defendant Olen Manning's motion for summary judgment is denied. See, e.g., Tamez v. City of San Marcos, Tex., 62 F.3d 123 (5th Cir. 1995).

ENTERED this  16th  day of January, 1997.

*Wm. F. Sanderson, Jr.*
UNITED STATES MAGISTRATE JUDGE

8